UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

SEP 30 1996

Michael N. Milby, Clerk of Court

LEE SCHAM,

          Plaintiff,

Vs.

DISTRICT COURTS TRYING CRIMINAL
    CASES, HARRIS COUNTY,
    TEXAS, et al.,
               Defendants.

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action
No. H96-563
PLAINTIFF'S MOTION WITH
BRIEF FOR SUMMARY JUDGMENT

## PLAINTIFF'S MOTION WITH BRIEF FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES PLAINTIFF LEE SCHAM and pursuant to this Court's ORDER FOLLOWING TELEPHONE CONFERENCE ON MAY 13, 1996 and Federal Rules of Civil Procedure 16(c)(5) and 56 files this motion for summary judgment with brief and moves this Honorable Court to grant said motion because the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there is no genuine issue of material fact and that Plaintiff Lee Scham is entitled to judgment as a matter of law. Furthermore, Plaintiff Lee Scham will show the Court the following:

1). The Decree was created in the complete absence of any authority and is currently being enforced in the complete absence of all authority;

2). The Decree's enactment was arbitrary and capricious;

3). The Decree and its enactment violates the following Constitutional Guarantees of Plaintiff and others not before the Court:

    a)    Freedom of Association

    b)    Freedom of Speech

    c)    Substantive Due Process

    d)    Procedural Due Process

    e)    Equal Protection of the Laws;

4). Defendants have provided no evidence, *which existed at the time the Decree was enacted,* or now to show that any Procedural or Substantive Due Process of Law was present in the Decree's enactment.

5). All of Defendants' summary judgment evidence, except for the Decree entered unilaterally by Charles J. Hearn, is newly created for this litigation and did not exist at the time of the Decree's enactment.

Plaintiff asserts and incorporates by reference all arguments, evidence, facts, authorities and pleadings filed in this case. Furthermore, when seeking injunctive relief the Court may take into consideration that which is in the common knowledge and is allowed to take judicial notice.[1]

Additionally, when seeking injunctive relief as a court of equity the Court can take into consideration the interests of others not before the Court. Those others would include the numerous attorneys who wish to send direct-mail advertising to criminal defendants charged in the state district criminal courts of Harris County, Texas. Those others also include the hundreds of thousands of criminal defendants who desire choices in choosing an attorney for their defense and their Constitutional right to receive direct-mail solicitation from attorneys.

Additionally, the Court may take into consideration all pleadings and other documents on file under the doctrine of aider by verdict.

## I. THE FACTS

The essential facts of this case are not in dispute. Both sides agree that a Decree (Order) is in effect and a copy of said Decree is attached as **EXHIBIT A** and incorporated by reference as if fully set forth herein. Both sides agree that the Decree has been

---

[1]*Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61 (1911).

in unbroken enforcement since the Decree was handed down on March 11, 1992. Plaintiff seeks no damages in this cause of action.

It is further uncontroverted that the Decree was not enacted pursuant to any law or authority or with any Due Process of any sort. The Decree speaks for itself.

Attached as **EXHIBIT B** and incorporated by reference as if fully set forth herein are certified copies of documents from the Harris County District Clerk's office with the **"BLACKED OUT"** information.

Attached as **EXHIBIT E** and incorporated by reference as if fully set forth herein is a copy of a previously submitted affidavit of Plaintiff Lee Scham.


## II. DOCUMENTS AND DISCOVERY PRODUCED BY DEFENDANTS

Plaintiff subpoenaed documents from Defendant Lloyd Doug Shaver on May 23, 1996, such subpoena is attached as **EXHIBIT C** and incorporated by reference as if fully set forth herein. By Order of this Court on July 31, 1996 The Honorable Kenneth M. Hoyt ordered Defendants to produce all documents relevant to this case on or before July 31, 1996. The Affidavit of Lloyd Doug Shaver, sworn to on July 25, 1996, states that all responsive documents within Lloyd Doug Shaver's custody and control are those attached to Defendant Shaver's answers to Defendant's deposition on written questions. Such affidavit is attached as **EXHIBIT D** and incorporated by reference as if fully set forth herein. Plaintiff's deposition notice to Doug Shaver, subpoena, questions and answers thereto are on file and under seal with the Court and Plaintiff incorporates same by reference as if fully set forth herein.

All evidence produced by Defendants demonstrates that there was no meaningful promulgation of the Decree. There was no notice. There were no findings of fact. There were no hearings. There was

no public or private comment. There was no vote taken. There was no law or authority to allow the handing down of the Decree.

As further evidence that absolutely no record or documentation of the Decree's promulgation exists is this answer of Defendant Shaver in his deposition on written questions.[2]

**Question 63:** What records exist of the events leading up to and including the enactment of the Decree?

**Answer:** *I do not know of any records such as meeting minutes describing events leading up to and including the enactment of the Decree.*

## III. DEFENDANTS' DO NOT HAVE THE AUTHORITY TO CREATE OR ENFORCE THE DECREE

**A.    Defendants are not authorized by any law to create or enforce the Decree.**

Defendants had no authority to enact the Decree. The false authority under which the Decree was signed, *District Courts Trying Criminal Cases, Harris County, Texas,* is merely a description of the twenty-two state district criminal courts of Harris County, Texas[3] and does not form an administrative body under any law of the State of Texas. Defendants have blatantly admitted that District Courts Trying Criminal Cases, Harris County, Texas, is not

---

[2]Defendant Shaver's Answers to Plaintiff Scham's Questions For Deposition on Written Questions.

[3]**Question 10:** What is "District Courts Trying Criminal Cases, Harris County, Texas" as appears under the signature line of the Decree?
**Answer:** A description of the twenty-two (22) district courts sitting in Harris County, Texas, and giving preference to the trial of felony cases.
--Defendant Shaver's Answers To Plaintiff Scham's Questions For Deposition on Written Questions.

formed under any law or authority.[4]  Amazingly, Defendants assert
that the Decree's enactment was a *unilateral* act of Charles J.
Hearn.[5]

The only authority that Defendants have falsely pointed to
justify the Decree is Texas Government Code, § 74.093.  However, §
74.093(a) clearly points out that a *majority vote* is a requirement
of any administrative rule promulgated under this section.

> § 74.093 Rules of Administration
>> (a)   The district and statutory county court judges in
>>       each county shall, *by majority vote*, adopt local
>>       rules of administration.

Furthermore, a Decree which orders the autonomous Harris
County District Clerk and Harris County Sheriff to do certain acts
cannot be considered "rules of administration" for Defendants'
courts.

Defendants have clearly and plainly stated that no vote of any
sort was taken and take pains to point this out by stating, and
Plaintiff quotes Defendants, "Both the original 1989 Order and the
subsequent 1992 Order directing the District Clerk and Sheriff of
Harris county to cease to disclose street addresses and telephone
numbers of criminal defendants was entered as a *unilateral act* by
Judge Charles J Hearn, as Administrative Judge, and *were not the
collective action of all Harris County criminal judges* in office at

---

[4]Question 18:  Under what law or authority is "District
Courts Trying Criminal Cases, Harris County, Texas" formed or
otherwise authorized?
    Answer:   As I stated in the answer to Question 10,
"District Courts Trying Criminal Cases, Harris County, Texas" is
not a corporate entity but merely a description of the twenty-two
courts sitting in Harris County, Texas, and giving preference to
the trial of felony cases.
--Defendant Shaver's Answers to Plaintiff Scham's Questions for
Deposition on Written Questions.

[5]Defendants' Motion for Summary Judgment and Brief in
Support, Page 5.

the time. The other twenty-one (21) judges in office at the time the orders were entered *were not aware of the orders* prior to their entry."[6]

**Plaintiff strongly urges the Court to realize the legal significance of what the Defendants have just admitted in their summary judgment motion.**

Defendants make this astonishing admission to try and head off later claims for damages against the other twenty-one judges sitting at the time the Decree was enacted and in whose courts the Decree was and is enforced everyday.

## B. NEITHER CHARLES J. HEARN NOR LLOYD DOUG SHAVER IS AN ADMINISTRATIVE JUDGE UNDER ANY LAW, STATUTE, OR OTHER AUTHORITY.

The Honorable Miron A. Love, during all times relevant to this proceeding, was the Local Administrative Judge under § 74.091 of the Texas Government Code. There is only one Local Administrative Judge in each county.[7] The law of the State of Texas does not provide for more than one administrative judge in each county.[8] Neither Charles J. Hearn nor Lloyd Douglas Shaver is an Administrative Judge under the laws of the State of Texas. The designation of a Civil and Criminal Administrative Judges of Harris County is not authorized by law and such titles have no legal meaning or significance.

Charles J. Hearn had no authority under any law to enact the Decree. District Courts Trying Criminal Cases, Harris County, Texas, is not an administrative body and cannot therefore issue administrative orders or any decree of any kind.

---

[6]Defendants' Motion for Summary Judgment and Brief in Support, Page 5.

[7]§ 74.091 Texas Government Code, Vernon's Texas Codes Annotated.

[8]Id.

6

## IV.   DUE PROCESS OF LAW

The guaranty of due process of law is one of the most important to be found in the Federal Constitution or any of its amendments.[9]  It has been described as the very essence of a scheme of ordered justice.[10]  Due process of law searches the authority for making law and is a legal right assertable in the courts.[11]

A state may not by any of its agencies, departments, or officials, whether legislative, judicial, or executive, disregard the constitutional prohibition.[12]  The Fourteenth Amendment is a restraint on the judicial departments of the state.[13]

Due process of law has two aspects-procedural and substantive.

## V.   DEFENDANTS DID NOT COMPLY WITH THE REQUIREMENT OF PROCEDURAL DUE PROCESS IN ENACTING THE DECREE

Procedural due process makes it necessary that one whom it is sought to deprive of such a right be given notice of this fact.[14] Defendants or their predecessors who created the Decree gave no notice before the Decree was enacted.  The following excerpts from Defendant Doug Shaver's deposition are illustrative.  The deposition of Doug Shaver is on file under seal with the Court.

---

[9]*Ulman v. Mayor, etc., of Baltimore*, 72 Md. 587, 20 A. 141, *aff'd* 165 U.S 719.

[10]*Brock v. Carolina*, 334 U.S. 424.

[11]*State v. Henry*, 25 P.2d 204.

[12]*Buchalter v. New York*, 319 U.S. 427; *Brinkerhoff-Faris Trust & Savings Co.*, 281 U.S. 673; *Georgia Power Co. v. Decatur*, 281 U.S. 505, *Phillip Wagner, Inc. v Leser*, 239 U.S. 207.

[13]*Barrows v. Jackson*, 346 U.S. 249, *reh'g denied*, 346 U.S. 841, *Hansberry v. Lee*, 311 U.S. 32, *Hovey v. Elliot*, 169 U.S. 409

[14]*Goss v. Lopez*, 419 U.S. 565, *Fuentes v. Shevin*,        407 U.S. 67.

**Question 28:** What are the names, dates, and page numbers of all the publications in which any notice by Criminal Courts Trying Criminal Cases, Harris County, Texas or any individual or individuals of that group was placed to notify the public or attorneys or others concerning public comment on or meetings to be held concerning the Decree or its subject matter?

**Answer:** None that I know of.

Question 34: What are the detailed examples of all instances of public participation in the process leading up to the Decree's enactment?

**Answer:** None that I know of.

**Question 36:** What is the detailed description of the process leading to the Decree's enactment?

**Answer:** I don't know.

**Question 46:** What are the names of all the people and entities who participated in the process leading up to the creation of the Decree?

**Answer:** Of my own personal knowledge, the only person I know who participated in the process leading up to the creation of the Decree was the Honorable Charles J. Hearn.

## VI. DUE PROCESS REQUIRES NOTICE

As a matter of due process, parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy

that right they must first be notified.[15] Consequently, notice is an essential element of due process.[16] As admitted by Defendants only Doug Shaver participated in any aspect of the Decree's enactment. Furthermore, a perusal of all materials and documents disclosed by Defendants reveals no notice of any type or sort.

A violation of a person's right of due process by failing to give him notice of the pendency of proceedings is not cured by granting him a hearing on his motion to set aside the decree.[17]

## VII. FREEDOM OF ASSOCIATION

Freedom of association is for the advancement of ideas of all kinds and includes legal interests.[18] The Decree, by its terms, prevents the release of the addresses of criminal defendants charged in the state district criminal courts of Harris County, Texas until the criminal defendants have obtained an attorney. Plaintiff's previously submitted affidavit clearly states that prior to the enactment of the Decree Plaintiff sent direct mail letters to potential clients by obtaining their names and addresses from the district clerk's office of Harris County, Texas.

Furthermore, neither the Decree nor any other documentation tells how the state district clerk of Harris County ever gets wind of when the criminal defendants have obtained an attorney. Just when a criminal defendant's address and telephone number is released in unknown. The Decree, by its very terms, hinders

---

[15]*Goss v. Lopez*, 419 U.S. 565, *Fuentes v. Shevin,* 407 U.S. 67.

[16]*Anderson Nat. Bank v. Luckett,* 321 U.S. 233; *Voeller v. Neilston Warehouse Co.,* 311 U.S. 531; *Snyder v. Massachusetts,* 291 U.S. 97.

[17]*Armstrong v. Manzo,* 380 U.S. 545.

[18]*United Transp. Union v. State Bar of Michigan,* 401 U.S. 576; *United Mine Workers v. Illinois State Bar Assoc.,* 389 U.S. 219.

criminal defense attorneys from associating with the criminal defendants charged in Defendant judges courts.

The right to freedom of association may not be circumscribed by the federal or state governments, or any of their subdivisions or agencies except upon a showing of a substantial or compelling state interest.[19] Defendants have not articulated a single interest that is being advanced. In fact Defendant Doug Shaver avoids all attempts at Plaintiff's desire to find a legitimate state interest for the Decree as evidenced by his deposition answers:

**Question 7:** What evils, problems, or concerns is the Decree designed to alleviate?

**Answer:** *The Decree is designed to accomplish the purpose stated on its face, i.e., to prevent the release of the addresses and telephone numbers of persons accused of felony criminal offenses before such accused are accorded a Preliminary Initial Appearance.*

Movant comment: **This question does not ask for a purpose, but for an evil, problem or concern. Furthermore, there is no mention of Preliminary Initial Appearance in the Decree nor has there been in any pleading or other writing in this litigation.**

**Question 26:** Is one purpose of the Decree to prevent attorneys from contacting criminal defendants by letter?

**Answer:** I can only answer for myself. The Decree, by its terms, does not refer to and does not prevent attorneys from contacting persons accused of felonies in Harris County. The Decree bars disclosure of street address and telephone numbers to anyone, not just attorneys.

---

[19]*Fishman v. Schaffer*, 429 U.S. 1325; *American Party of Texas v. White,* 415 U.S. 767, *reh'g denied,* 416 U.S. 1000.

10

Movant comment: **The question asks for a purpose. It is obvious that any person can read the Decree, "*by its terms*", and repeat such terms.**

**Question 39:** Why is it permissible, under the Decree, to give out addresses and numbers [of the criminal defendants charged in Defendant judges' courts], after the criminal defendants have obtained an attorney as compared to before the criminal defendants have obtained an attorney?

**Answer:** *Under the Decree, it is permissible to give out addresses and numbers, after the criminal defendants have obtained an attorney because the express language of the Decree permits it while the express language of the decree forbids the release prior to that time.*

## VIII. FREEDOM OF SPEECH

*"Congress shall make no law... abridging the freedom of speech..."[20]*

The Due Process Clause of the Fourteenth Amendment applies this First Amendment prohibition of quashing Free Speech to state action. Furthermore, commercial speech is within these constitutional protections.

*"So long as we preserve a predominantly free enterprise economy, the allocation of our resources in large measure will be made through numerous private economic decisions. It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed. To this end, the*

---

[20]The First Amendment to the U.S. Constitution.

11

*free flow of commercial information is indispensable.*"[21]

Attorneys are not excluded from Constitutional protections regarding commercial Free Speech. In 1977, in *Bates v. State Bar of Arizona*[22] the Arizona Bar attempted to ban attorney advertising. The Court held that attorney advertising is a form of protected speech which may not be subjected to *blanket suppression* unless false, deceptive or misleading. Lee Scham wishes to disseminate truthful, helpful information via direct mail, however, Defendants have suppressed his ability to do so by the Decree.

In-person solicitation is treated differently than solicitation through printed media. The Court has held that an attorney can not be disciplined for advertising for legal business through printed media containing truthful and non-deceptive information and advice concerning the rights of potential clients.[23] Plaintiffs, in the case at bar desires to advertise for legal business through printed media containing truthful and non-deceptive information and advice concerning the rights of potential clients.

In *Ohralik v. Ohio State Bar Assoc.* the Court validated a ban on **in-person** solicitation of **accident victims** by attorneys. The Court was expressly concerned that accident victims were especially incapable of making informed decisions and protecting their interests and that in-person solicitation was especially susceptible to abuse. Plaintiff does not seek to perform any in-person solicitation nor is his direct mail practice targeting accident victims.

Plaintiffs' case is very similar to *Shapero v. Kentucky Bar*

---

[21]*Virginia Pharmacy Board v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748 (1976)

[22]433 U.S. 350 (1977).

[23]*Zaunderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,* 471 U.S. 626 (1985).

*Association*.[24]  In *Shapero* an attorney proposed to send a letter to prospective clients who had foreclosure suits pending against them. In the case at bar Plaintiff proposes to send a letter to prospective clients who have criminal cases pending against them. The Court held that attorney advertising by straight forward direct mail advertising is constitutionally protected commercial speech and that the State must have a substantial interest that is directly advanced by any infringement.

The Court suggested that the State could regulate abuses and minimize mistakes by less restrictive means than an absolute ban, such as requiring solicitation letters to filed with a State agency.  The court noted that unlike an in-person "badgering advocate" a letter can be placed in a drawer to be considered later, ignored or discarded.[25]

The State Bar of Texas is the proper body to regulate attorney advertising.  The State Bar of Texas has had disciplinary procedures in place for false or misleading attorney/client communication ever since the enactment of the State Bar Act.  In June of 1995, after promulgation which provided for public comment, attorney comment, meetings, hearings, vote-taking, and approval by the Supreme Court the State Bar enacted extensive attorney advertising rules.[26]  Such rules provide that a Texas State Bar committee on advertising actually visually scrutinize a facsimile of the letter which the attorney wishes to send to the client. Such rules are targeted to prevent false and misleading advertising from reaching the public.

The Decree, on the other hand, has not gone through any of the mechanisms which provide for Due Process and the Decree is not targeted at false or misleading statements, but is a blanket

---

[24]486 U.S. 466 (1988).

[25]Id at 476-77.

[26]Part VII, Texas Rules of Disciplinary Procedure, §,§ 702-707.

suppression of attorney advertising.

The Court further articulated reasons for upholding First Amendment protection to attorney targeted mail advertising in *Peel v. Attorney Registration and Advertising Commission of Illinois*. In *Peel* Justice Stevens wrote, "[a] principal reason why consumers do not consult lawyers is because they do not know how to find a lawyer able to assist them with their particular problems."[27]

This reasoning is extremely relevant to Plaintiff's case because Plaintiff's targeted clients are charged with felonies, are soon to make their first court appearance, and have their very freedom and possibly their entire future at stake. At this most crucial of times Defendants put up a roadblock to prevent needed truthful, helpful legal information from reaching these potential clients in need. To date Defendants have given no reason for the Decree, however, upon information and belief it is to increase their leisure time.[28]

**B.  The Decree does not withstand any prong of Three-Prong Central Hudson test.**

*If our commercial speech rules are to control this case than it is imperative to apply them with exacting care and fidelity to our precedents, for what is at stake is the suppression of information and knowledge that transcends the financial self-interests of the speaker.*[29]

In *Florida Bar v. Went For It,* the Court recently articulated that restrictions on truthful lawyer advertising must pass the

---

[27]Id at 110.

[28]Undercover Reports, 6 P.M. News, ABC Television affiliate, Channel 13, Houston, Texas, aired on February 6th, 7th, and 8th, 1996, A COPY OF THE REPORTS HAS BEEN SUBMITTED TO THE COURT.

[29]*Florida Bar v. Went For It*, 115 S.Ct. 2371 (1995).

14

standards set forth in *Central Hudson*.[30] Under *Central Hudson* a restriction on commercial speech will be upheld only if the government:

(1) asserts a substantial interest in support of its regulation;

(2) establishes that the restriction directly and materially advances that interest; and

(3) demonstrates that the regulation is "narrowly drawn".



bar.

(1) The government asserts a substantial interest in support of its regulation. <u>Defendants have not asserted a single interest in</u>

what evils it alleviates, or any information surrounding the Decree's creation.

(3)  The government demonstrates the regulation is "narrowly drawn". The regulation is not narrowly drawn.  <u>The Decree cuts off all direct mail solicitation by attorneys to the attorneyless criminally accused regardless of the content of the letters</u>. Furthermore, the complete secrecy and lack of Due Process or promulgation leading to the Decree's enactment leaves only speculation as to the reasons for the decree and the interests advanced.  If one does not know the interest advanced it is impossible for anyone to demonstrate that the regulation is narrowly drawn to meet that unknown interest.

**C.   State of Texas district criminal trial court judges can not enact laws nor can they govern the general citizenry by Decree.**

Defendants admit that their Decree has the force and effect of law.[32]  Yet Defendants have not put forth or hinted at any statute, regulation, case law, Texas constitutional mandate or any other authority that grants them the power to summarily hand down edicts such as the Decree.  How Defendants, state district court criminal trial judges, believed they could make such an edict as the Decree is nothing short of amazing.

The Texas Constitution establishes the functions of the Texas Legislature which includes the power to make, alter and repeal law.[33]  The Texas Legislature is granted ultimate authority  over judicial administration by the Texas Constitution.[34]   The Texas Legislature is authorized to dictate the procedures and means by

---

[32]Paragraph 24, Defendants' Original Answer to Plaintiffs' Original Complaint.

[33]Article III, § 1 of the Texas Constitution.

[34]*Amarillo Bail Bonds v. State*, 802 S.W.2d 237, 240 (Tex. Cr. App. 1990).

which the substantive provisions of the Texas Constitution are made effective.[35]

The Texas Legislature has delegated to the *highest courts*, The Texas Supreme Court and The Criminal Court of Appeals, authority to promulgate rules for the <u>governance of courts</u> within their respective jurisdictions.[36]

However, the Supreme Court does not have authority under the Texas Constitution to promulgate any rule conflicting with any provision of any lawfully enacted statute.[37]    Furthermore, the Decree governs the District Clerk and the Sheriff's Department which is way beyond any *governance of courts*.   Neither does the Court of Criminal Appeals have any constitutional power to promulgate rules inconsistent with the provisions of a lawfully enacted statutes.   The Court of Criminal Appeals and subsequently lower criminal trial courts, such as Defendants, have not been authorized by any Constitutional provision or statute to promulgate any rule inconsistent with the laws of the State of Texas.

The Texas State Bar has promulgated rules inconsistent with the Decree which allow direct mail attorney advertising and the Decree is void for this reason alone.   The Texas State Constitution does not allow state district trial courts to enact laws and the Decree is void for this reason alone.   The Defendants have followed no procedures or means laid down by the Texas Legislature for rules promulgation and the Decree is void for this reason alone.

**D.    The Decree, which deprives vast numbers of citizens of many constitutional and Civil rights and liberties, was not**

---

[35]Vinson v. Burgess, 733 S.W.2d 263, 270 (Tex. 1989).

[36]Article 35, § 31 of the Texas Constitution and Sections 22.003, 22.004, 22.108, and 22.109 of the Texas Government Code.

[37]*Few v. Charter Oak Fire Insurance Company,* 463 S.W.2d 242, 425 (Tex. 1971), *Kirkpatrick v. Hurst,* 484 S.W.2d 587, 598 (Tex. 1972), *Clear Lake City Water Authority v. Clear lake Utilities Co.,* 549 S.W.2d 385, 389 (Tex. 1977).

**promulgated with any procedural Due Process safeguards.**

Defendants provided for no notice period before the Decree went into effect. Defendants provided for no public commentary, or lawyer commentary, before the Decree went into effect. There were no hearings, meetings, newspaper articles, announcements, or debates.

Concepts of notice and hearing have been at the core of procedural "due process" from the beginning of the Courts interpretation of the phrase.[38] Defendants' Decree, therefore, does not meet any minimum Due Process standard set forth in any case the Court has decided. The Decree in unconstitutional for this reason alone.


## VIII. THE THREATENED INJURY TO MOVANT OUTWEIGHS ANY DAMAGE THE INJUNCTION MIGHT CAUSE TO THE NONMOVANT.

The Party attempting to uphold a restriction on commercial speech carries the burden of justification.[39] Such burden is heavy, it is not supported by mere speculation or conjecture. The governmental body seeking to restrain commercial speech must demonstrate its harms are real[40] and that its restrictions will in

---

[38]*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856).

[39]*Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 71 (1983).

[40]In *Florida Bar v. Went For It*, 115 S.Ct. 2371 (1995), the Court points out the need for evidence of problems before a restriction on commercial speech is applied. In *Florida Bar* a two year study was performed, the public was polled, hearings were conducted, and extensive public commentary was reviewed. Then the State Bar proposed rules before the Florida Supreme Court reviewed then adopted them.

fact alleviate them to a material degree.

Defendants have not set forth a single interest advanced for their Decree. The Decree was not promulgated in any fashion that provides for Due Process or demonstrates any need to restrict attorneys from direct mail advertising to criminal defendants. The Decree is not the result of any democratic process of the citizens or duly elected legislators of the State of Texas. As such no legislative history exists, no House debates are redacted, no opinions offered by concerned groups can be found, no record of citizens speaking out can be found, no vote tally, no newspaper accounts or editorials... **ABSOLUTELY NOTHING.** There is only a total void of Due Process and then, on March 11, 1992... **FULL AND ABSOLUTE ENFORCEMENT OF THE DECREE.** Even if Defendants' now come up with reasons for the Decree these would only be conjecture and speculation due to the total secrecy and lack of democratic process in its enactment.

Plaintiffs have no burden to speculate on the reasons Defendants handed down the Decree[41] but some reasons can be gleaned from third party sources and guesswork.

Want of excessive leisure time by and for some Harris County District Criminal court judges.[42]

Criminal defendants who are lacking an attorney to advise them of their rights and options are much more likely to plead guilty at arraignment or accept the services of a court-appointed attorney who is paid minimally and quickly "pleads out" the defendant. This

---

[41]*Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 71 (1983).

[42]Undercover Reports, 6 P.M. News, ABC Television affiliate, Channel 13, Houston, Texas, aired on February 6th, 7th, and 8th, 1996.

substantially decreases the time judges need to read motions, make rulings, hold hearings and conduct trials and substantially increases their leisure time. The threatened injury to nonmovant Defendants' want of excessive leisure time is not outweighed by Plaintiffs' rights to Free Speech to protect the rights and lives of the accused, nor is Defendants' want for excessive leisure time outweighed by Plaintiffs Liberty Rights to Carry On an Avocation of His Choosing and his Right to Contract. The Constitution provides for no Right to Excessive Leisure Time and as such Plaintiffs' rights far outweigh those of Defendants.

### Privacy rights of the Accused.

The information released by the Harris County District Clerks office, in spite of the Decree, includes the name of the accused, whether they have mental problems, drug problems, alcohol problems, the crimes charged (e.g. child molestation), and past criminal history.[43] Furthermore, the names and addresses of the accused are not withheld once an attorney is hired or appointed. Privacy rights of the accused are not an issue here.

### Political Contributions and Assistance.

The Decree, by preventing criminal defendants from becoming aware of affordable, readily available legal help, creates a large number of paid criminal court appointments. Such lawyers receiving criminal court appointments may feel a sense of gratitude and contribute, monetarily or by donating services, to the political campaigns of the presiding appointing judges. Such interests are not outweighed by the constitutional and civil rights of the Plaintiffs. Furthermore, such dependence on appointments may be detrimental to the adversarial and advocacy nature of our legal system.

### IX. AN INJUNCTION WILL NOT DISSERVE

---

[43]EXHIBITS B-G attached to Plaintiffs' Original Complaint.

## THE PUBLIC INTEREST.

The Supreme Court has stated that courts of Equity may go further to both give and withhold injunctive relief when the public interest is at stake than if only private interests are at stake.[44]

Plaintiffs' case for injunctive relief lands squarely and fully on the side of the public interest.

*In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and the district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, <u>to have the Assistance of counsel for his defense</u>.*[45]

The blanket suppression of Free Speech by the Defendants' Decree severely restricts the right of the accused to counsel. Without access to counsel the criminally accused may not be made aware of any right that they possess under any of part of the Constitution or its Amendments.

The following is a hypothetical example of how the public is disserved by the Decree and illustrates the severe consequences when Assistance of counsel is prevented or hindered in anyway:

A 911 emergency call to the Pasadena police records the following message:

**"Send an ambulance, I've been shot by Jimmy, Jimmy shot me!"**

---

[44]*Virginia R. Co. v. System Federation,* 300 U.S. 515 (1937).

[45]The Sixth Amendment to the Constitution.

Jimmy, who has just murdered the 911-caller, is also arrested on suspicion of murder. At the scene Police arrest Johnny, a friend of the murder victim, for carrying a concealed weapon. Johnny is charged with a weapons violation and makes bail. Johnny begins a search for an affordable attorney, however, he works full time at a low paying job and his search is slow in getting the desired results. At his arraignment two weeks after the incident Johnny is admonished by the criminal trial court (yes, the same court that handed down the Decree) to get an attorney and arraignment is reset.

Five weeks (35 days) after Johnny's arrest Johnny is appointed a lawyer or hires one and tells counsel his story. Immediately, the appointed, or hired, attorney rushes to secure the 911 tape, however, the police claim the tape has been destroyed pursuant to Pasadena's policy of destroying 911 tapes after 30 days.[46] Jimmy, in jail and under police interrogation, blames Johnny for the murder. Police arrest Johnny for capital murder.

With the testimony of the actual murderer, Jimmy, against him and no exculpatory 911 tape, Johnny is convicted, languishes in prison for years, and then is executed by the State of Texas. Jimmy, the real murderer is set free and murders Elizabeth a year later.

Had Plaintiffs' truthful, helpful, informational letters reached the accused he may at the very least have called or visited Plaintiff where a cursory evaluation of the case could have exposed the need to secure the 911 tape. The Decree prevents Plaintiff and those similarity situated from speaking to Johnny, via direct mail, about a subject upon which their very lives depends.

Plaintiffs letters containing truthful, helpful information would reach people like Johnny within two to three days of arrest but for the Decree of the Defendants.

Besides evidentiary matters quick and ready access to legal

---

[46]Pasadena Emergency 911 records retention policy.

22

information and counsel is important for the crucial decisions made soon after arrest.

-Prosecutors are free to obtain plea bargains from uninformed defendants at time of arraignment.

-Criminal defendants can be ordered to jail and lose their freedom by going to court, as ordered, without an attorney. Such incarceration being totally unnecessary but for the lack of access to the helpful, useful legal information which Plaintiffs wish to direct mail to the criminally accused.

-Criminal defendants would experience much emotional trauma and duress by not knowing the procedures or penalties that await them in the criminal justice system.

NOTE that _any_ prosecutor working for the State to convict the criminally accused always has access to the address and telephone number of the accused at all times. It is only fair and just that those working to protect the rights of the accused be given that information.

The services to the public by a Preliminary Injunction include:

-providing the public with helpful, truthful information regarding available legal services when such services are in need.

-more assurance that the innocent will be set free and the guilty will not be free because the innocent have taken their place.

-less Harris County taxpayer money going to criminal appointments.

-free flow of information.

A preliminary injunction which rescinds and nullifies the decree will do no disservice to the public.

## _X.  PUBLIC POLICY_

_It is against Public Policy to allow Governance by Decree. The United States of America and Texas has a long Tradition of Democratic Governance. To allow the Decree to stand one more minute is an affront to Democracies and Democratic Principles throughout the World._

23

*It is against Public Policy to block access of legal information and Access to Counsel by the Public. When access to legal help is blocked the Public is prevented from realizing or utilizing any Constitutional, Civil or other Right they may possess.*

*It is against Public Policy to allow criminal trial court judges to supplant the authority of a State's Legislature without State Constitutional Amendment.*

## CONCLUSION

Any of the following reasons, standing alone, requires that the Decree be abolished:

1). The Decree was enacted without any law or authority.

2). District Courts Trying Criminal Cases, Harris County, Texas is not an administrative body under any law

3). Whether a law, regulation, rule or administrative order comports with the requirements of Due Process a Court must look at the record *as it existed at the time of enactment*. Defendants have admitted that no record exists and, furthermore, that only Charles J. Hearn was involved in the promulgation of the Decree. Furthermore, only evidence that existed at the time of the Decree's enactment can be referred to evaluate whether Due Process of Law was present.

4). The Decree violates Plaintiff's and criminal defendants' right to Freedom of Association without a substantial or compelling state interest that was articulated at the time the Decree was enacted.

5). Plaintiff's direct-mail letters are protected First Amendment Speech, not commercial speech and therefore the Decree cannot stand.

6). The Decree violates Plaintiff's and criminal defendants' right to Freedom of Speech and said regulation does not meet the three-prong *Central-Hudson* test for upholding a state law which restricts Freedom of Commercial Speech.

7). The Decree violates criminal defendants right to Counsel for their Defense.

8). The Decree is arbitrary and capricious.

24

9). The Decree violates criminal defendants right to receive mail from direct mail solicitors as recognized by the Supreme Court.

Furthermore, Defendant has given no evidence, that existed at the time that Charles J. Hearn acted unilaterally without any authority to enact the Decree, to support their Decree or its continued enforcement.

Plaintiff has shown that no genuine issue of material fact exists and that Plaintiff is entitled to judgment in Plaintiff's favor as a matter of law.

## ATTORNEY'S FEES

Plaintiff is entitled to reasonable attorney's fees and expenses incurred in litigating this case because Plaintiff is entitled to such under 42 U.S.C. § 1988 and/or will have prevailed in a civil rights cause of action in federal court and/or will have successfully vindicated the constitutional and civil rights of many who are not before the court and/or otherwise in equity or law is entitled to or in the Court's discretion should be awarded attorney's fees.

## PRAYER

Plaintiff prays that the Court will enter summary judgment in favor of Plaintiff and against Defendants, that the Court will declare the Decree and its continued enforced unconstitutional, that the Court will order Defendants to make the Court's order known to those acting under or pursuant to the Decree, that the Court will order the payment of reasonable attorney's fees, costs and expenses to Plaintiff for this litigation and any and all appeals and that Plaintiff will be awarded such further and other relief as Plaintiff show himself entitled.

Plaintiff further prays that the Court will give Plaintiff permanent injunctive relief against the Defendants which prevents the Defendants from acting to prevent the release of the addresses and phone numbers of the criminal defendants charged in state district criminal courts of Harris County by the Harris County District Clerk's Office and the Harris County Sheriff's office.

RESPECTFULLY SUBMITTED,
LAW OFFICE OF RANDALL L. KALLINEN
ATTORNEY and COUNSELOR at LAW

By: _____

Randall L. Kallinen
Attorney-In-Charge
SBN: 00790995 TX
3303 South Rice Avenue, Suite 115
Houston, Texas 77056
Telephone: 713/621-9422
Facsimile: 713/621-9335
Attorney for Plaintiff, Lee Scham
Admitted to Practice before the
Southern District of Texas, No. 19417

## CERTIFICATE OF CONFERENCE

Plaintiff's counsel has conferred with Defendants' counsel concerning the subject matter of the foregoing document. Defendants do not plan to give Plaintiff the relief Plaintiff requests.

By: _____

Randall L. Kallinen
Attorney-in-Charge

26

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been delivered by United States Mail on the date of the filing of the original with the Clerk of this Court, to the address of Defendants' counsel as shown below.

Christine G. Edwards
Attorney at Law
Assistant Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548

By: _____
Randall L. Kallinen
Attorney-In-Charge

THE STATE OF TEXAS

COUNTY OF HARRIS

### O R D E R

BE IT REMEMBERED, on this the 11th day of March, 1992, IT IS ORDERED that Katherine Tyra, or any representative of Katherine Tyra, District Clerk of Harris County, Texas, and Johnny Klevenhagen, Sheriff of Harris County, Texas, or any representative of Johnny Klevenhagen, hereby cease to disclose street addresses or telephone numbers of any defendant in any case in the District Courts Trying Criminal Cases until an attorney is hired by the defendant or an attorney is appointed by the court to represent said defendant.

IT IS FURTHER ORDERED that this Order be spread upon the Minutes of the District Courts Trying Criminal Cases.

SIGNED this 11th day of March, 1992.

_____
Hon. Charles D. Hearn
Administrative Judge
District Courts Trying Criminal Cases
Harris County, Texas

COMPLIANT WITHOUT ATTORNEY

IF THE FAMILY MEMBER TELLS YOU, THEY HAVE HIRED THE ATTORNEY
YOU CAN GIVE THEM COPIES WITHOUT BLOCKING ANYTHING OUT.

PER KEN HEWIUTT
11/02/95

*EXHIBIT B*

```
...NSACTION #.: 245018                    D.A. LOG #: 245018
  CUSTODY....: Y                     IO BY PRINTS:
TE OF ARREST: 01/10/1996            TIME OF ARREST: 1630

...N #.........:
...IS NUMBER...: 629100012414
...FENDANT NAME: BURTON, GARY PAUL
...IAS NAME....:
...IAS SPN.....:

  CITIZEN....: Y                     INS#:
...CE OF BIRTH: MI           CITY OF BIRTH: MT CLEMENS
...CE........: W      SEX: M           DOB:
...RITAL STATUS: SI   BUILD: MED    HEIGHT: 511      WEIGHT: 164
...R.........: BRO    SKIN: FAR     EYES: BRO
...RS........:

...EET ADDRESS:
...Y.........:                      ZIP:
...NE........:

...OR ARREST?: N          FBI#:              STATE ID #:
...NCY ID #..:            SSN:                 SO#:
...IAS SPN(S).:
...N.........:           DL ST:

...LOYER.............:
...UPATION..........:
...LOYER/OTHER ADDRESS: E
...EET ADDRESS.......:
...Y.................:
...LOYER/OTHER PHONE..:

...TAL ILLNESS................: N

...DEFENDANTS?    NO

...S THE DEFENDANT HAVE A SPN?    Y    N
```

*V.J. Spn: 01506933*

*Cause: 712430*

*Ct. 174 n/c*

THE STATE OF TEXAS
VS.
**GARY PAUL BURTON**

D.A. LOG NUMBER: **245018**
CJIS TRACKING NO.: **9002257090-A001**

SPN: 01506933/999

DATE PREPARED: 1/10/96

RELATED CASES:

BY: EMG   DA NO: 096
AGENCY: HCCO PCT. 4
O/R NO: 9601101869
ARREST DATE: 1-10-96

NCIC CODE: 2605 44
FELONY CHARGE:
    CREDIT/DEBIT CARD ABUSE
CAUSE NO:   712430
HARRIS COUNTY
DISTRICT COURT NO: _____176_____

BAIL: $ 2,000
PRIOR CAUSE NO:

---

## IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

Before me, the undersigned Assistant District Attorney of Harris County, Texas, this day appeared the undersigned affiant, who under oath says that he has good reason to believe and does believe that in Harris County, Texas, **GARY PAUL BURTON** , hereafter styled the Defendant, on or about **JANUARY 10, 1996**, did then and there unlawfully and knowingly steal an AUTOMATIC TELLER MACHINE  DEBIT card owned by the cardholder, SHELIA HEARD, with the intent to deprive the cardholder of the property and without the effective consent of the cardholder.

It is further presented that in Harris County, Texas, GARY PAUL BURTON, hereafter styled the Defendant, heretofore on or about JANUARY 10, 1996, did then and there unlawfully and knowingly receive with intent to USE an AUTOMATIC TELLER MACHINE DEBIT card owned by the cardholder SHELIA HEARD, knowing the DEBIT card had been stolen.

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

Sworn to and subscribed before me on  JAnuary 19 1996

_____
AFFIANT

_____
ASSISTANT DISTRICT ATTORNEY
OF HARRIS COUNTY, TEXAS.

## COMPLAINT

FILED
CHARLES BACARISSE
DISTRICT CLERK
HARRIS COUNTY, TEXAS

96 JAN 19  PM 0:25

BY _____
DEPUTY

# HARRIS COUNTY PRETRIAL SERVICES AGENCY DEFENDANT INTERVIEW

DEFENDANT NAME: BURTON, GARY PAUL

SPN: 01506933    CLERK

## CHARGE INFORMATION

999

CHARGE AND BOND
CCA    002000

COURT AND CASE NO.
176/071243001010    /    /

ADDITIONAL CHARGES:    FELONY 00    MISDEMEANOR 00    CLASS C 00

HOLDS N    HARRIS CO. WARRANTS N    FUGITIVE N

## CRIMINAL HISTORY SUMMARY

FELONY CONVICTIONS 00    MISDEMEANOR CONVICTIONS 00

PRESENTLY ON PROBATION N    PRESENTLY ON PAROLE N    PREVIOUSLY FTA N

DEFFENDANT REPORTED CONVICTIONS / OPEN CASES

| | ARREST DT | LOCATION | CHARGE | NAME USED | DISPOSITION |
|---|---|---|---|---|---|
| 1. | | | NONE P/DF | | |
| 2. | | | | | |
| 3. | | | | | |
| 4. | | | | | |

## PERSON IDENTIFICATION INFORMATION

TRUE NAME: BURTON, GARY PAUL    ADDITIONAL SPN _____    POSSIBLE SPN _____

AKA / OTHER NAMES NONE P/DF

AGE 19    SEX M    RACE W    MARITAL STATUS S    DOB ████    DOB2 _____

CITIZENSHIP Y POB MICHIGAN    HGT 511    WGT 164    EYE BRO    HAIR BRO

SCARS / MARKS / TATOOS NONE    DEFENDANT SPEAKS EN

SSN ████    DL NO. ████    DL STATE ██    SON 731636

FBI _____    SID _____    HPD _____    INS NO. _____

## RESIDENCE INFORMATION

999

CURRENT ADDRESS ████    APT NO. ███    CITY ████    STATE ██

ZIP ████    COUNTY ████    APT NAME _____    HOME PHONE ████    RETURN Y

LENGTH HERE 6 /Y    LIVES WITH CLAUDIA    RELATION MTHR    WK PHONE 6307272

CHILDREN 00/00    AGE RANGE FROM / TO /

ALTERNATE ADDRESS NONE    APT NO. _____    CITY _____    STATE _____

ZIP _____    HOME PHONE _____    LIVES WITH _____

RELATIONSHIP _____    WORK PHONE _____    CAN CONTACT _____

PREVIOUS ADDRESS NONE    APT NO. _____    CITY _____    STATE _____

ZIP _____    HOME PHONE _____    LIVED WITH _____    RELATION _____

STILL THERE __    CAN CONTACT __    LENGTH HERE ____ /

## OCCUPATIONAL INFORMATION

999

EMP FT    UNEMP ___/    SCH ___    TRN ___    DISABILITY NONE    OTHER ____

CURRENT EMPLOYER/SCHOOL ████    POSITION/GRADE ████    DEPT ████    SHIFT

ADDRESS ████    CITY ████    STATE ██    ZIP ████

WORK PHONE ████

# HARRIS COUNTY PRETRIAL SERVICES AGENCY DEFENDANT INTERVIEW

DEFENDANT NAME: BURTON, GARY PAUL      SPN: 01506933      CLERK

## FINANCIAL INFORMATION

999

SPOUSES EMPLOYER SINGLE     ADDRESS _____ CITY _____ STATE __ ZIP ____

SPOUSES INCOME NONE    CASH ON HAND 0    OTHER PROP OWNED NONE

BANK NAME(S) NONE        AMT CHECKING NONE    AMT SAVINGS NONE

RESIDENCE STATUS 0    NAME ON LEASE MTHR

OTHER INCOME    SOURCE NONE     INCOME _____     SOURCE NONE     INCOME _____
           SOURCE NONE     INCOME _____     SOURCE NONE     INCOME _____

MOTOR VEHICLE 1 Y   MAKE / MODEL 89 CHEVELET    VALUE 5000    OWES 5000
MOTOR VEHICLE 2 __   MAKE / MODEL _____    VALUE _____    OWES _____

MONTHLY EXPENSES    MORT / RENT 0    UTIL 0    FOOD 0    MEDICAL 0
           CHILD CARE 0    INS 0    AUTO 250    CREDITORS 0
           COURT ORDERED 0    OTHER 0

## REFERENCES

999

CONTACTED ANYONE SINCE ARREST Y    WHO KELLY TODD -GFND    PHONE NUMBER 3195133

ATTORNEY'S NAME NONE      ATTORNEY'S PHONE NUMBER _____

NEXT OF KIN MARSHA CONNELY    RELATION AUN    KNOWN DEF __    ADDRESS UNK, MICHIGAN

HOME PH UNK    WK PH _____ CONTACT __ VERIFIER _____ DATE / TIME _____

VERIFIED : ADDRESS __ 1 __ 2 __ 3 __ 4 __ 5 __    COMMENTS _____

REFERENCE KELLY TODD    RELATION GFD    KNOWN DEF 6MO    ADDRESS UNK HUMBLE

HOME PH 3195133    WK PH 8520122    CONTACT Y VERIFIER _____ DATE / TIME _____

VERIFIED : ADDRESS __ 1 __ 2 __ 3 __ 4 __ 5 __    COMMENTS _____

REFERENCE NO OTHER P    RELATION _____ KNOWN DEF __    ADDRESS _____

HOME PH _____ WK PH _____ CONTACT __ VERIFIER _____ DATE / TIME _____

VERIFIED : ADDRESS __ 1 __ 2 __ 3 __ 4 __ 5 __    COMMENTS _____

## COMMENTS

999

## BAIL CLASSIFICATION SCALE

| VARIABLE | SCORING | POINTS |
|---|---|---|
| 1. AUTO | Add 1 point if the defendant has an automobile | (+) 1 |
| 2. TELEPHONE | Add 1 point if the defendant has a phone in his / her residence | (+) 1 |
| 3. FULL TIME EMPLOYMENT OR SCHOOL OR HOMEMAKER | Add 1 point if defendant is either employed or attending school full time, or if defendant is a full time homemaker | (+) 1 |
| NUCLEAR FAMILY | Add 1 point if defendant lives alone or with his / her spouse and or children | (+) 0 |
| UNDER 21 YEARS OLD | Subtract 1 point if the defendant is under 21 years old | (-) 0 |
| 5. PRIOR FAILURES TO APPEAR | Subtract 1 point if defendant has one or more verified fta's | (-) 0 |
| 7. PRIOR MISDEMEANORS | Subtract 1 point if defendant has 2 or more prior misdemeanor convictions | (-) 0 |
| 8. PRIOR FELONIES | Subtract 2 points if the defendant has 2 or more prior felony convictions | (-) 0 |
| TOTAL | RANGE +4 TO -5 | |

BOND 002000      No. 071243001010      SPN: 01506933

STATE OF TEXAS                    §        IN  THE  176  DISTRICT  COURT

VS.                               §        COUNTY  CRIMINAL  COURT

    BURTON, GARY PAUL             §        AT  LAW  NO.  _____

                                  §        JUSTICE  OF  THE  PEACE

                                  §        PRECINCT  ____  POSITION  ____

DATE BND MADE XXXXXX              §
                                  §        HARRIS  COUNTY,  TEXAS
INS: COM      WAR: XXXXXXXXXX     §

### STATUTORY WARNING BY MAGISTRATE, PROBABLE CAUSE FOR FURTHER DETENTION HEARING AND COMMITMENT

On  the  11TH  day of  JANUARY  1996 , the  above  named  defendant,  charged  with

CREDIT/DEBIT CARD ABUSE  appeared in person before  this Court and the following proceedings took place: The defendant was given the following warning:

You have the right to remain silent. You have the right to have an attorney present during any interview with peace officers or attorneys representing the state. You have the right to terminate any such interview at any time. You are not required to make a statement and any statement you make may be used against you. If you are indigent and cannot afford counsel you have the right to request the appointment of counsel and, if you are charged with a felony, you have the right to an examining trial prior to indictment.

The Court (1) determined whether probable cause for further detention existed, (2) set the defendant's bond, and (3) informed the defendant, in clear language, of the accusation against him and any charging instrument.

### ORDER

To the Sheriff of Harris County, Texas, it is hereby ordered that: (applicable boxes checked)

☑ 1. Probable cause for further detention exists.  Defendant's bond is:

☐  raised to _____

☐  lowered to _____

☑  will remain at 2,000.00

☑ 2. A personal bond has been:

☐  approved

☐  approved subject to verify

☐  disapproved

☑  referred

and the defendant is ordered remanded to the custody of the Harris County Sheriff.

☐ 3. Probable cause for further detention does not exist and the Sheriff is ordered to immediately release the defendant from custody in this case.

_____
Hearing Officer

### RECEIPT ACKNOWLEDGEMENT

I hereby acknowledge that I received an exact copy of this document.

_____        _____
Defendant                                      Date

I, the undersigned employee of the Harris County Sheriff's Department, hereby acknowledge that I received an exact copy of this document.

Date  1/11/96      Time  1000      Name  MP

671606

# BAIL BOND

CASE NO. 712430

COURT SETTING:

DATE 1-12-96

TIME 8:30AM

**County of Harris — State of Texas** (seal) JAN 11 7 13 96

Know All Men By These Presents:

CHARGE Credit/Debit Card Abuse

SPN 01506933

That we, **Gary Paul Burton** , as principal, and the

undersigned **GERALD P. MONKS**

as sureties, are held and firmly bound unto the STATE OF TEXAS, in the penal sum of

**Two Thousand** ($ 2,000.00 ) Dollars and, in addition thereto, we are bound for the payment of all fees and expenses that may be incurred by any peace officer in re-arresting the said principal in the event any of the hereinafter stated conditions of this bond are violated for the payment of which sum or sums well and truly to be made, we do bind ourselves, and each of us, our heirs, executors and administrators, jointly and severally.

THE CONDITION OF THIS BOND IS THAT THE DEFENDANT HAS BEEN CHARGED WITH A **Felony**
(Felony-Misdemeanor)

offense and to secure his release from custody is entering into this obligation binding him to appear before

**176th Criminal District Court** Court of Harris County, Texas.

NOW THEREFORE, IF THE SAID PRINCIPAL SHALL WELL AND TRULY MAKE HIS PERSONAL APPEARANCE BEFORE SAID COURT INSTANTER AS well as before any other court to which the same may be transferred and for any and all subsequent proceedings that may be had relative to said charge in the course of criminal actions based on said charge, and there remain from day to day and term to term of said courts, until discharged by due course of law, then and there to answer said accusation against him, this obligation shall become void, otherwise to remain in full force and effect.

SIGNED AND DATED **January 11** , 19 **96** .

Taken and approved this **11th** day of **January** , 19 **96** .
Tommy B. Thomas, Sheriff Harris County, Texas

By _____ Deputy

_Gerald P. Monks_ Surety

**2016 MAIN St., Suite 108**
(Mailing Address)

**Houston, Texas 77002 759-6000**
(City and State) (Phone)

Lic. # **74108** Empl. **Nell**

**Humble Office 441-1003**

RACE_____ SEX___ DOB___ HT.___ WT._____

HAIR_____ EYES_____ DL #_____ STATE_____



Jail Location **County**

RECORDER'S MEMORANDUM:
This instrument is of poor quality and not satisfactory for photographic recordation; and/or alterations were present at the time of filming.

```
# 74108
MONKS, G.P.
0847 BAILSMAN BOND CO.
2016 MAIN, ST. 108
HOUSTON, TEXAS 77002
713-601-7400
```

Co-Surety

_____ DEPUTY

(Mailing Address)

(City and State) (Phone)

GERALD P. MONKS

FILED CHARLES BACARISSE DISTRICT CLERK HARRIS COUNTY TEXAS 1996 JAN 12 AM 7:53

OATH OF SURETIES
THE STATE OF TEXAS
COUNTY OF HARRIS We, each of us, _____

_____ do swear that we are worth in our own right, at

least the sum of **TWICE THE AMOUNT OF THE BOND** DOLLARS, after deducting from our property all that which is exempt by the Constitution and Laws of the State from forced sale, and after the payment of all our debts, of every description, whether individual or security debts, and after satisfying all encumbrances upon our property which are known to us; and that we reside in the County of **HARRIS** and have property in the State liable to execution worth:

# United States District Court

SOUTHERN _____ DISTRICT OF TEXAS, HOUSTON DIVISION

LEE SCHAM, ET AL

V.

DISTRICT COURTS TRYING CRIMINAL
CASES, HARRIS COUNTY, TEXAS, ET AL

## SUBPOENA IN A CIVIL CASE

CASE NUMBER  H96-563

EXHIBIT C

TO:     Honorable Judge Doug Shaver
        301 San Jacinto, Room 532
        Houston, Texas 77002

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

........ That which is requested in the attached Exhibit A.

| PLACE | DATE AND TIME |
|---|---|
| 301 San Jacinto, Room 532 Houston, Texas 77002 | JUNE 14th, 1996 10:00 a.m. |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Randall L. Kallinen* NR (Plaintiff) | 5-23-96 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Randall L. Kallinen, Attorney At Law
3303 South Rice Avenue, Suite 115, Houston, Texas 77056

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

# *EXHIBIT A*

1. All documents used in answering the deposition questions.

2. All meetings of minutes of District Courts Trying Criminal Cases, Harris County, Texas from January 01, 1991 to the present.

3. All memos, letters, computer records, faxes or other documentation regarding the subject matter of this lawsuit.

4. All documents required to be disclosed under Fed. Rule Civ. P. 26(a).

7

$E X H I B I T \quad D$

| | | |
|---|---|---|
| LEE SCHAM, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION No. H-96-563 |
| | § | |
| DISTRICT COURTS TRYING | § | |
| CRIMINAL CASES, HARRIS | § | |
| COUNTY, TEXAS and THE | § | |
| HONORABLE DOUG SHAVER, et al. | § | |
| Defendants. | § | |

## AFFIDAVIT OF LLOYD DOUGLAS SHAVER

**THE STATE OF TEXAS** §

§

**COUNTY OF HARRIS** §

BEFORE ME, the undersigned authority, personally appeared the Honorable Lloyd Douglas Shaver, who after being by me duly sworn, upon his oath, deposed as follows:

1.　"My name is Lloyd Douglas Shaver. I am over 21 years of age, of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

2.　I am the presiding judge of the 262nd Judicial District of Harris County, Texas. I have been sitting as the Administrative Judge for the District Courts Trying Criminal Cases in Harris County, Texas since 1993.

3.　I believe I have fully responded to Plaintiff Scham's Questions for Deposition on Written Questions. I was not the Administrative Judge at the time the Orders in question were issued, however, I have answered to the best of my knowledge and believe all responsive

documents have been produced. The documents attached to my Answers were created and maintained by the Office of the Administrative Judge in the regular course of business. The meeting minutes were created at or near the time of the meetings. The documents attached to my Answers to Plaintiff's deposition on written questions are the only responsive documents within my custody and control. Documents withheld, if any, are documents protected by the attorney-client privilege and are not discoverable.

LLOYD DOUGLAS SHAVER
Judge, 262 Judicial District Court
Harris County, Texas

SWORN TO AND SUBSCRIBED BEFORE ME, on this the 25 day of July, 1996.

JANET N. WARNER
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
AUG. 15, 1999

NOTARY PUBLIC in and for the
State of Texas

*Scham*: Affidavit of Hon. Lloyd Douglas Shaver . . . Page 2

EXHIBIT E

| | | |
|---|---|---|
| LEE SCHAM, et al., | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| Vs. | § | Civil Action |
| | § | No. H96-563 |
| | § | AFFIDAVIT |
| DISTRICT COURTS TRYING CRIMINAL | § | |
| CASES, HARRIS COUNTY, | § | |
| TEXAS, et al., | § | |
| Defendants. | § | |

## AFFIDAVIT of LEE SETH SCHAM

THE STATE OF TEXAS )
)
COUNTY OF HARRIS )

BEFORE ME, the undersigned authority, on this day personally appeared the undersigned affiant, WHO SWORE ON OATH that the following facts are true:

"1. My full name is Lee Seth Scham. I am the Plaintiff in this cause of action. I am at least eighteen years of age, under no disability of the law, and of sound mind. I have never been convicted of a felony or any crime of moral turpitude. I have never been adjudicated insane or mentally incompetent in any proceeding. I am fully capable of making this affidavit and I have personal and first hand knowledge of the facts in this affidavit and Plaintiff's First Amended Complaint to which this AFFIDAVIT is attached and such facts are true.

1

I am an attorney licensed by the Supreme Court of Texas and practicing in Harris County, Texas. My law practice in concentrated in the area of criminal defense law. I represent clients charged with criminal offenses. I receive almost all of my legal business, 95% or more, from direct mail letters sent to criminal defendants.

Prior to the issuance of the document dated March 11, 1992, referred to in this cause of action as the Decree and attached as EXHIBIT A to Plaintiff's First Amended Complaint, I would advertise for clients by obtaining the addresses of recently charged criminal defendants from the Harris County District Clerk's Office, Criminal Division, Public Service Department. The addresses were on documents in the defendant's file on record. I would then mail the defendants a truthful letter containing helpful legal information and introducing myself as an attorney. I have never mailed any letter to any criminal defendant charged in the Defendants' courts which contained false, misleading, or deceptive information.

It was often the case that I would be hired by criminal defendants before their first court appearance after their release from incarceration. After the Decree was handed down I could no longer get the addresses of the criminal defendants until after they already had obtained an attorney by appointment or

by hiring one. Many of these potential clients would plead guilty through an attorney appointed by Defendant judges before receiving my direct mail letter and I would be precluded from informing them of their rights or obtaining their business or speaking to them as a result.

The length of time that transpires from criminal defendant's arrest to the availability of the defendant's address varies greatly from one day to two months. The Decree causes the date of address availability to be random and arbitrary. My belief is that many cases are compromised to the criminal defendants' detriment due to the Decree and acts in furtherance thereof.

I have lost my Freedom of Speech as it relates to the criminal defendants and their criminal cases. I have also lost substantial amount of legal business and, hence, revenue due to the Decree.

The Decree blanketly restricts my right to speak to the criminal defendants without regard of the content of my speech. The Decree and subsequent acts in furtherance of the Decree are not narrowly tailored to prevent false, misleading or unfair statements from reaching the public. Furthermore, there were never any factual findings to support the need for the Decree.

The Decree is not applied evenly as it may effect a criminal defendant's access to counsel for one day, two days, ten days, or fifty days. The Decree is

3

discriminatory because criminal defendants, charged in the county courts at law with misdemeanors, are not subject to the restriction imposed by the Decree. The Decree thereby limits access to counsel of defendants charged with more serious crimes, and subsequently with a higher risk of losing their freedom and property. Such felony defendants should be more assured or have the same assurance of access to counsel as the misdemeanor defendants, not less.

My practice is devoted to individuals charged with at least one felony and, therefore, all my clients have been charged in the Harris County state district criminal courts to which the Decree applies. I believe the Decree violates the criminal defendants' right to Access to Counsel as guaranteed by the Sixth Amendment. Furthermore, because it violates the right of Access to Counsel, the criminal defendant may not, and usually is not, aware of many other rights they possess under the Constitution or its Amendments.

Because of the Decree and acts in furtherance thereof Harris County is footing the bill for an increased number of court appointments made by Defendant judges in their courts. The adversarial and advocacy nature of our criminal justice system is severely harmed by having judges prevent access to counsel of criminal defendants charged in their courts only to appoint the attorney for the defendant and then get a quick plea.

4

I have no adequate remedy at law. My Right to Free Speech is being unconstitutionally restricted due to the Decree. Because of the Decree and the secret, non-public manner in which it was handed down I have been deprived of my Liberty to Contract and my Liberty to Carry on Avocation of My Choosing without Due Process of law. I also have been deprived of property without Due Process of Law as guaranteed by the Fifth and Fourteenth Amendments to the Constitution.

Prior to the issuance of the Decree, there was no notice, no chance to be heard, no newspaper accounts, no invitation to meetings, no public participation, absolutely nothing that would even hint that the Decree or anything similar was about to be handed down.

When the state district court criminal trial court judges of Harris County ran for their respective offices I had no idea, based on law, precedent, campaign materials, the Texas Constitution or past history that the people being elected had the authority or power to hand down such an order as the Decree.

There is no administrative body known as District Courts Trying Criminal Cases, Harris County, Texas. The Decree and acts in furtherance of the Decree are being done totally outside any law or authority. Based on the law this results in personal liability for all Defendants for the acts complained of in this

5

*suit.*

*The ongoing injury and threat of future injury to my Constitutional and Civil Rights and Liberties and those of the criminal defendants far outweighs any damage that might be caused to the nonmovant. Furthermore, the substantial threat exists that I and the criminal defendants will suffer irreparable injury to these rights if the Decree is not nullified and rescinded. Because of the secrecy and lack of meaningful promulgation of the Decree and acts in furtherance thereof I do not know what interests are being served by the Decree to the nonmovant. Based on my belief and local TV Channel 13 undercover news reports, the Decree may have been handed down to increase the leisure time of some of the state district criminal trial judges in Harris County. This would be accomplished by facilitating the disposal of felony cases through quick guilty pleas offered through appointed counsel.*

*Based on the law concerning the constitutionality of attorney advertising and the secret, nonpublic nature of the Decree our cause has a substantial likelihood to succeed on the merits. Our chance of success on the merits is substantial also because of the total lack of Due Process in the Decree's enactment and that it violates the Texas Open Records Act.*

The granting of a preliminary injunction or permanent injunction which has the effect of nullifying and rescinding the Decree and addressing the acts in furtherance thereof will do the public a great service by stopping governance by decree in violation of the principles of Democracy that the public holds dear and also for the reasons pointed out above. Furthermore, the public will be served by having access to counsel of their choice and, therefore, being made aware of their rights under the law.

The granting of a preliminary injunction and permanent injunction which rescinds the Decree and orders the Defendants to make such rescission known to those acting under it will not disserve the public interest."

**LEE SETH SCHAM, AFFIANT**

**SIGNED AND SWORN**
to before me on this the _25th_ Day of _May_ , 19 _96_ .

Notary Public, Harris County, Texas

7